IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARIA SMITH-HOSCH            :
                             :
                             :
     v.                      :   Civil Action No. DKC 18-3659
                             :
GLENN L. BRAMBLE, et al.     :
                             :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment case brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e *et seq.* and 42 U.S.C. § 1983, is the motion to dismiss filed by Defendants Glenn Bramble, Phillip Rice, and Laura Layton. (ECF No. 7).[1] The issues have been fully briefed, and

---

[1] Plaintiff amended her complaint *after* these Defendants filed their motion to dismiss. "Normally, an amended complaint supersedes the original complaint." *Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 456 (2009)(citing 6 C. Wright & A. Miller, Federal Practice & Procedure § 1476, pp. 556–557 (2d ed.1990)). Sometimes, for reasons of judicial economy:

> defendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading. To hold otherwise would be to exalt form over substance.

*Buechler v. Your Wine & Spirit Shoppe, Inc.*, 846 F.Supp.2d 406, 415 (D.Md. 2012), *aff'd*, 479 F. App'x 497 (4th Cir. 2012)(quoting 6 Wright et al., § 1476, at 638 (2010 ed.)). Here, the first amended complaint does not remedy the alleged defect raised in the

the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be denied.

## I. Background

### A. Factual History

Unless otherwise noted, the facts outlined here are set forth in the amended complaint and construed in the light most favorable to Plaintiff. The Dorchester County Board of Education (the "Board") is a five-member body tasked with management of all educational matters that affect Dorchester County, Maryland. Md. CODE ANN., Educ. § 4-101. At all relevant times, the Board consisted of President Glenn Bramble, Vice President Phillip Rice, and Member Laura Layton (collectively, the "Individual Defendants"), as well as Members LeOtha Hull and Glen Payne. In the summer of 2017, the Board made a series of staffing and personnel changes. First, the Board hired Dr. Diana Mitchell as superintendent. (ECF No. 13, at 16). Dr. Mitchell is the first African American superintendent of Dorchester County. *Id*. Second, the Board restructured upper-management under Dr. Mitchell, eliminating two assistant

---

original motion. The first amended complaint merely adds the Board as a defendant without altering the substance or legal sufficiency of the claims against these Defendants.

superintendent positions and replacing them with four "cabinet" positions. *Id*. at 17. One of these four cabinet positions is the Director of Secondary Education which Plaintiff Dr. Maria Smith-Hosch applied for, interviewed for, and received via an offer letter dated August 7, 2017. *Id*. at 15.

Prior to her hiring as the Board's Director of Secondary Education, Dr. Smith-Hosch — who is African-American — had spent 42 years as an employee of Prince George's County's Board of Education ("PGCBE"). *Id*. at 9. Dr. Smith-Hosch retired from PCGBE effective September 1, 2017, but her nearly contemporaneous hiring and retirement ran up against MD. CODE ANN., State Pers. & Pens. § 22-406: "An individual who is receiving a service retirement allowance under this title may not be employed within 45 days of the date the individual retired[.]" Thus, Dr. Smith-Hosch was designated a "retired rehired" employee and her official start date was delayed until October 15, 2017, although she volunteered her time in an advisory capacity prior to that date. *Id*. at 25, 26.

In February of 2018, a fight broke out at a local Dorchester County high school which roiled the community, the Board, and Dr. Mitchell's cabinet. *Id.* at 28, 29. The fight — described as "involving African American students and staff" — quite literally

3

divided the community along racial lines, with black and white community members at the ensuing Board meeting allegedly sitting on opposite sides of the room. *Id.* In the aftermath of the fight, the community pressured the Board to implement security and safety plans, with some community members allegedly going so far as to offer money to the individual defendants if they would fire Dr. Mitchell and her cabinet, including Dr. Smith-Hosch. *Id.* at 30, 32.

In the spring of 2018, Mr. Bramble ordered Dr. Mitchell to investigate Dr. Smith-Hosch over allegations that she had been "bullying" several principles working under her, all of whom were white. *Id.* at 34. This missive came from Mr. Bramble himself and not from the Board as a whole. *Id.* Dr. Mitchell reluctantly acceded to Mr. Bramble's order and launched an investigation. *Id.* at 37. That investigation ultimately refuted the allegations of "bullying" and turned up just one complaint: a principal serving under Dr. Smith-Hosch, Ms. Lynn Sorrells, expressed some discomfort over the fact she was tasked with supervising Dr. Smith-Hosch's husband, Dr. Benjamin Hosch, who was then serving as a "retired rehired" assistant principal at Ms. Sorrells' school. *Id.* at 38.

Mr. Bramble met Dr. Mitchell's findings with skepticism, however, and, on May 17, called for Dr. Smith-Hosch's immediate termination. *Id*. at 39, 40. In the ensuing vote on May 22, Mr. Bramble, Mr. Rice, and Ms. Layton, composing a bare majority of the Board, voted for Dr. Smith-Hosch's termination. *Id*. at 44. Over the next few months, the Board also took action against three other African-American employees, terminating Dr. Hosch, placing Dr. Mitchell on paid administrative leave, and doing the same for Arcelius Brickhouse, another African-American cabinet member. *Id*. at 59. The complaint makes no reference to any supposed reason for Dr. Hosch's termination. The complaint does, however, state that the Board's decision to place Dr. Mitchell and Dr. Brickhouse on leave had to do with an alleged conspiracy between the two of them and Dr. Smith-Hosch "to give an African American candidate for assistant principal the interview questions in advance of his interview[.]" *Id*. at 61. That interview took place on August 9, 2018 — over two months after Dr. Smith-Hosch's termination. *Id*.

**B. Procedural Background**

Plaintiff filed suit against the three named Defendants on November 29, 2018. In the initial complaint, Dr. Smith-Hosch stated that:

> Upon the EEOC's issuance of the Notice of Right to Sue, Dr. Smith-Hosch will be amending her lawsuit to add the Board as the defendant to her race discrimination claim under Title VII, which arises from the same set of facts supporting her § 1983 claim against the Individual Defendants.

*Id*. at 3. In the meantime, the Individual Defendants moved to dismiss on January 21, 2019. (ECF No. 7).

On April 16, 2019, this court granted Plaintiff's unopposed motion for leave to file the first amended complaint, adding a Title VII claim against the Board itself pursuant to the EEOC's April 9, 2019 Notice of Right to Sue. (ECF No. 12).

**II. Standard of Review**

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n. 3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Id*.

**III. Analysis: Individual Board Member Liability under § 1983**

The Amended Complaint asserts that each of the three individual defendants "usurped" his or her role as a Board Member and voted in favor of Plaintiff's termination, on the basis of race. The Amended Complaint also alleges that Mr. Bramble ordered the superintendent to investigate Plaintiff. Plaintiff argues that by voting in favor of her "termination," the Individual Defendants "acting under color of state law, caused a deprivation of a federal right." (ECF No. 9, at 19) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). The sole argument of the Individual Defendants is that causation is lacking. Because, they contend, "the board of directors acts as a unit," *Hecht v. Resolution Trust Corp.*, 333 Md. 324, 332 (1994), individual board members cannot be said to have "caused" the deprivation in question. (ECF No. 7, at 6).

Defendants cite two unreported trial court decisions to try to make their argument: *Hanifee v. Bd. Of Educ. Of Kent Cty.*, 2010 WL 723772 (D.Md. Feb. 24, 2010), and *Moore v. Bd. Of Educ. of Baltimore Cty.*, 2017 WL 3172820 (D.Md. July 25, 2017). Neither, however, is factually identical to this case, and Defendants

attempt to carry their rationale too far. In *Hanifee*, the Plaintiff — a member of the Kent County, Maryland Board of Education — brought suit against his fellow board members over an alleged conspiracy to deprive him of his First and Fourteenth Amendment Rights. The court found against Hanifee for a litany of reasons: 1) Hanifee could "not make any specific allegations regarding individual conduct" by the individual board members; 2) the lack of any "clearly established" federal right meant that the individual board-members were protected by qualified immunity; and 3) because "a local governmental body disciplining one of its members is a 'core legislative act' and therefore protected by legislative immunity." *Hanifee*, 2010 WL 723772, at *6.

In addressing the first reason for granting a motion to dismiss Hanifee's complaint, the court noted the inability of a Maryland county's Board of Education to act as anything but a cohesive unit. *Id*. ("In Maryland, individual Board members and employees have no authority to take actions against other Board members.")

*Moore*, the other case Defendants rely on to make their causation argument, includes similar language. There, the plaintiff brought suit, not against any individual school board members, but against the board's legal counsel for his role in

9

causing the board to deprive plaintiff of her federal rights. *Moore*, 2017 WL 3172820, at *4. In *Moore*, as in *Hanifee*, the court stressed that "under Maryland law, a county's Board of Education decides all matters of public education — neither its individual board members nor its legal counsel has *individual* decision making authority." *Id*.

Surely no *individual* board member or board employee may be held liable for the actions of a board as a whole. If, however, a plaintiff can make 1) specific allegations regarding the *individual* conduct of a member of board, and 2) that individual action is found to have deprived the plaintiff of a federal right, then the individual member of that board may be held liable for his or her actions under § 1983.

This conclusion flows from the blackletter standard for § 1983 claims: "to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, *caused* the deprivation of a federal right." *Hafer v. Melo*, 502 U.S., at 25 (emphasis added). *See also*, *Lyles v. Montgomery Cty.*, MD, 162 F. Supp. 2d 402, 405 (D.Md. 2001) ("To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that the defendant, while acting under color of state law, violated a federal right.") There can be no doubt that when a member of a

10

Maryland board of education casts a vote, he or she does so "under color of state law." And, if it is alleged, and then proven, that an illegal reason was a motivating factor in the individual's vote, and a change in that person's vote would alter the outcome of the Board's decision, causation can be shown. *See, e.g.*, *Quigg v. Thomas Cty. School Dist.*, 814 F.3d 1227, 1244 (11th Cir. 2016)(discussing "same decision" defense in the context of §1983 claims against individual board members). This notion of "causation" is the flip-side of the recognized "cat's paw" theory of liability of an employer for acts of a supervisor without ultimate decision-making authority. *Weathersbee v. Baltimore City Fire Dept.*, 970 F.Supp.2d 418, 425 n. 4 (D.Md. 2013) (citing *Staub v. Proctor Hosp.*, 562 U.S. 411 (2011)).

Other courts have recognized the potential viability of claims under § 1983 against individual board members under similar circumstances. *See, e.g.*, *Martin v. Shelby Cty Bd. of Educ.*, 756 Fed.Appx. 920, 925 (11th Cir. 2018); *Zurchin v. Ambridge Area School Dist.*, 300 F.Supp.3d 681, 692 (W.D.Pa. 2018); *Williams v. Alhambra School Dist.*, 234 F.Supp.3d 971 (D.Ariz. 2017); *Pettis v. Nottoway Cty School Bd.*, 2013 WL. 3063704, at *7 (E.D.Va., October 31, 2014); *Smith v. Brockton School Dist.*, 2008 WL 11414565, at *6-7

(D. Mont. November 24, 2008); *Dunlop v. Colgan*, 687 F.Supp. 406 (N.D. Ill. 1988).

The Individual Defendants' motion to dismiss rests entirely on the premise that individual school board members can, under no circumstances, be held liable under §1983 for the consequences of their votes. Neither the case law in this circuit, nor the others that have addressed it, support this premise. Unlike in *Hanifee*, Plaintiff identifies specific, individual conduct by each of the Individual Defendants: namely, their votes regarding Dr. Smith-Hosch's termination. It is enough that Plaintiff plausibly alleges that the Individual Defendants' votes were 1) motivated by discriminatory animus, 2) intended to cause an adverse employment action, and 3) that each vote proximately caused the adverse employment action.

## IV. Conclusion

For the foregoing reasons, the motion to dismiss filed by Defendants Bramble, Layton and Rice will be denied. A separate order will follow.

<pre>                                      /s/                 </pre>
DEBORAH K. CHASANOW
United States District Judge